UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

ELECTRONICALLY FILED

| | |
|---|---|
| UNITED STATES OF AMERICA | PLAINTIFF |
| v. | CRIMINAL ACTION NO. 3:19-CR-00208-RGJ |
| JOSEPH SAMIR ZAKHARI | DEFENDANT |

### DEFENDANT ZAKHARI'S MOTION TO
### COMPEL ATTENDANCE OF LAW ENFORCEMENT OFFICER
### AS WITNESS AT EVIDENTIARY HEARING

The Court will conduct an evidentiary hearing on July 14 to gather proof concerning Defendant Joseph Zakhari's pending motion to suppress. (*See* R. 32, Mot. to Suppress, Page ID # 99, *and* R. 48, Text Order.) The government has promised to make available for the hearing all "law enforcement officials involved in [Mr. Zakhari's] arrest" except one: the female Louisville Metro Police officer who came to the arrest scene in the guise of the "undercover persona" (the subject of the "boredcrbgirl" text messages) and who participated in the arrest itself. (*See* Attachment, Correspondence, pg. 5.) The prosecution has also refused to identify that police officer, and the defense has thus been unable to serve its own subpoena on her. (*Id.* at pp. 1-6.) Mr. Zakhari thus needs the Court's help.

The motion to suppress focuses on the circumstances surrounding Mr. Zakhari's arrest on October 8, 2019 and the events that followed, including the search of his home, the recording of his statements at the scene and en route to the investigators' offices, and his interrogation that evening.  During the two days preceding the arrest, Mr. Zakhari had texted back and forth with LMPD Detective Matt Hedden, who was pretending to be "boredcrbgirl," a fictional character whose social media account displayed one or more photographs of the female officer.  (*See* R. 37, Transcript of Bond Hrg., Hedden test. at pp. 4-6, Page ID # 115-117.)  In addition to the images she provided for the account, the female officer posed at least once for a photograph transmitted contemporaneously to Mr. Zakhari.  Although "boredcrbgirl" was purportedly a fifteen-year-old girl, the female officer portraying her was at least twenty-one, and as far as Detective Hedden knew, might have been as old as twenty-five or thirty.  (*Id.* at pg. 6, Page ID # 117.)  This adult woman stepped fully into the "boredcrbgirl" persona on October 8, when she traveled by Uber to Mr. Zakhari's apartment building "for the stated purpose" (in Detective Hedden's words) of enabling Mr. Zakhari "to perform sex acts" with her.  (R. 1, Complaint, pg. 3 ¶ 7, Page ID # 4.)  When the female officer arrived at the scene, she got out of the Uber and, using Detective Hedden's cell phone, signaled Mr. Zakhari to come downstairs.  "She was dropped at the front door," testified Detective Hedden, "and the text message was sent that he would be on his way out.  And then Mr. Zakhari exited the front door of the building, met the

undercover officer, and asked her if she wanted to go inside." (R. 37, Tr. of Bond Hr'g, pg. 21, Page ID # 132.)

It was at this moment that Mr. Zakhari, standing near the female police officer and in her full view, was arrested. (R. 1, Compl. pg. 4 ¶ 8, Page ID # 5.) "Arrested," in this context, is a euphemism for what Detective Hedden described as "subdued by several" law enforcement officers and "wrestled to get his hands behind his back" (R. 37, Tr. of Bond Hr'g pg. 9, Page ID # 120); and even this better-detailed account might be a euphemism for something more dramatic still.

The sudden arrest, with all its physical, mental, and emotional impact, influenced everything that happened thereafter that day. Among other important facts, the circumstances of the arrest must be explored in depth for the Court to determine the voluntariness of Mr. Zakhari's later statements to police and his purported cooperation with the search of his home. By law, Mr. Zakhari's statements may not be used against him at trial unless they were made voluntarily – that is, judging "the totality of the circumstances," the Court must be convinced by the government that Mr. Zakhari's statements were "'the product of a rational intellect and a free will.'" *United States v. Brown*, 557 F.2d 541, 548 (6th Cir. 1977) (quoting *Blackburn v. Alabama*, 361 U.S. 199, 208 (1960)). Similarly, the warrantless search of Mr. Zakhari's apartment cannot rest on Mr. Zakhari's permission unless the prosecution satisfies the burden of proving that his consent was voluntary under "the totality of all the circumstances," *Schneckloth v. Bustamonte,* 412 U.S. 218, 227

(1973), which requires "clear and positive testimony" that the consent was "unequivocal, specific, intelligently given and not influenced by any duress or coercion." *United States v. Taylor,* 956 F.2d 572, 577-578 (6th Cir. 1992) (quoting *United States v. Williams*, 754 F.2d 672, 675 (6th Cir. 1985)).

The female officer pretending to be "boredcrbgirl" outside Mr. Zakhari's home was not the only eyewitness to his arrest, but she was one of few such witnesses. Her vantage point – standing a few feet in front of Mr. Zakhari when he was "subdued" – provided a field of view that no other officer on the scene possessed at that precise moment. She plainly has knowledge that relates to an important question in the suppression hearing. She should be a witness at that hearing.

The Court has good reason to expect attorneys to confer about a matter like this before complaining to the Judge, and to expect professional counsel to accommodate one another whenever ethically possible. The Court can take a few minutes to review the correspondence between the undersigned and the Assistant United States Attorney to assess defense counsel's efforts to resolve the issue presented in this pleading. Counsel has communicated with the Assistant United States Attorney about this subject many times, starting at least six weeks ago. (*See* Correspondence at pg. 1.) About a month ago, the prosecutor gave her assurance that the government would either bring the female police officer to the hearing, or would identity the officer

so defense counsel could subpoena her. (*See id.* at pp. 3, 6.) But this has not happened, and it will not happen unless the Court intervenes.

The Court likely has the authority, when appropriate, to instruct the prosecution to bring a particular government witness to an evidentiary hearing. *See, e.g., United States v. Gonzalo-Beltran*, 915 F.2d 487, 488-489 (9th Cir. 1990) (referring to district court's refusal to order government to accept subpoena for confidential informant). More forthrightly, though, the Court unquestionably has the discretion to order the government to disclose the identity of one of its witnesses in advance of trial. *United States v. Kendricks*, 623 F.2d 1165, 1168 (6th Cir. 1980); *see also United States v. Grace*, 526 F.3d 499, 509-510 (9th Cir. 2008) (surveying case law from appellate courts). As the Ninth Circuit observed, the rules of procedure and traditions of American law "reinforce the logic and fairness of requiring the government to produce a pretrial witness list of both experts and nonexperts (subject to appropriate conditions) so that the parties – and the district court – may be adequately prepared for trial. That is the essential premise of the court's inherent power to manage its cases to ensure the fair and effective administration of the criminal justice system." *Grace*, 526 F.3d at 512. If the government will not agree to bring the female officer to Court on July 14, the Court has ample authority to compel the government to disclose the identity of the officer so defense counsel can subpoena her.

The defense accordingly asks the Court to enter the attached proposed order, and counsel thank the Court for its consideration.

Respectfully submitted,

*Michael R. Mazzoli*
Scott C. Cox
Michael R. Mazzoli
Attorneys for Defendant Zakhari
COX & MAZZOLI PLLC
600 West Main Street, Suite 300
Louisville, Kentucky 40202
502-589-6190
MazzoliCMLaw@aol.com

### CERTIFICATE OF SERVICE

On June 12, 2020, I electronically filed this document through the ECF system, which will send a notice of electronic filing to counsel of record.

*Michael R. Mazzoli*
Scott C. Cox
Michael R. Mazzoli

6