UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

ELECTRONICALLY FILED

UNITED STATES OF AMERICA            PLAINTIFF

v.            CRIMINAL ACTION NO. 3:19-CR-00208-RGJ

JOSEPH SAMIR ZAKHARI            DEFENDANT

### DEFENDANT JOSEPH ZAKHARI'S MOTION TO DISMISS COUNT THREE OF THE SUPERSEDING INDICTMENT FOR PROSECUTORIAL VINDICTIVENESS

Prosecutors abuse their authority and offend Due Process when they supersede an indictment and add a new criminal charge to "punish the defendant for standing on his legal rights." *United States v. Ladeau*, 734 F.3d 561, 566 (6th Cir. 2013). Courts will presume that a prosecutor has breached this principle and will dismiss a new charge if, "in the particular factual situation presented, there exist[s] a realistic likelihood of vindictiveness for the prosecutor's action." *Ibid.* (quoting *Bragan v. Poindexter*, 249 F.3d 476, 481 (6th Cir. 2001)). The Sixth Circuit recognized the hallmarks of vindictiveness in a case where "[t]he charge in the superseding indictment was based on the same conduct underlying the charge in the initial indictment, the prosecution

obtained no evidence supporting the superseding indictment that it did not already possess prior to obtaining the initial indictment, and the [new offense] that was charged in the superseding indictment carries longer mandatory minimums … than the [offense] that was initially charged." *Id.* at 570.

    This is precisely what has happened here.  First, Defendant Zakhari asserted his legal rights: he filed several requests to amend his conditions of release; initiated proceedings to suppress key evidence, prompting an evidentiary hearing and an order to submit competing briefs; litigated his right to offer the testimony of a witness whose identity the government has concealed; fought the government for the return of electronic devices seized from him (failing chiefly because the government claimed the devices were still "in the queue" for forensic testing); and repeatedly sought disclosure of critical social media evidence until, compelled by the government's recalcitrance, the defense had to ask the Court to intervene.  In response to this, the government added a new criminal charge: one based on the same conduct underlying the two initial allegations, supported by no new evidence, and carrying a mandatory minimum punishment of fifteen years in prison, half again longer than the terms carried by the charges in the original indictment.  (*See* R. 50, Superseding Indictment, Count 3, Page ID # 366.)

The Due Process Clause "prohibits the prosecution from punishing a defendant for exercising a protected statutory or constitutional right." *Ladeau*, 734 F.3d at 567 (citing *United States v. Poole*, 407 F.3d 767, 774 (6th Cir. 2005)). Courts will presume a prosecutor has acted vindictively "where circumstances reasonably indicate retaliation, even if there is no direct evidence that the prosecutor was in fact improperly motivated." *Ibid.* (citing *United States v. Goodwin*, 457 U.S. 368, 373-376, 383 (1982)). A presumption of vindictiveness arises when the defendant "establishes that (1) the prosecutor has some stake in deterring the defendant's exercise of his rights and (2) the prosecutor's conduct was somehow unreasonable…." *Ibid.* (citing *Bragan*, 249 F.3d at 482) (internal punctuation omitted). Once the presumption takes hold, "[t]he government bears the burden of rebutting the presumption with 'objective, on-the-record explanations' such as 'governmental discovery of previously unknown evidence' or 'previous legal impossibility.'" *Ibid.* (quoting *Bragan*, 249 F.3d at 482).

Courts must, of course, exercise their authority carefully, particularly when examining the prosecutor's motive for a charging decision made during the pretrial stage of the proceedings. *Ladeau*, 743 F.3d at 567. The choice to add a new charge may be entirely proper, for instance, if "the prosecutor's assessment of the proper extent of prosecution may not have crystallized" when the

original charges were sought. *Ibid.* (quoting *Goodwin*, 457 U.S. at 381). Not so here, though: as in *Ladeau*, "there is little reason to suspect that the prosecutor's view of [Mr. Zakhari's] case changed significantly between the two indictments, given that the government already possessed all of the relevant evidence that supported the superseding indictment well before procuring the first indictment." *Id.* at 571. Our case is not one where the prosecutor initially had to "act on (and later compensate for) incomplete information or understanding," *id.* at 568 (quoting *United States v. Meyer*, 810 F.2d 1242, 1247 (D.C. Cir. 1987); on the contrary, "there is nothing to indicate that the superseding indictment compensated for unexpected changes or an incomplete initial grasp of the pertinent issues or facts." *Ibid.* Here, as in *Ladeau*, the "evidentiary landscape" has not "materially changed;" it was not "previously impossible to bring" the superseding indictment's new charge; and the government did not need extra time to "unravel complex evidentiary or legal issues" relevant to the new charge. *See id.* at 571.

Another reason that courts are careful in the pretrial context is because a new and more severely-punished charge might validly stem from the plea bargaining process. *Ladeau*, 734 F.3d at 569 (citing *Bordenkircher v. Hayes*, 434 U.S. 357, 363-365 (1978)). Not in our case, however. Just as the government did in the *Ladeau* litigation, the prosecutor in our case "unilaterally imposed the

4

more severe charge without engaging [Mr. Zakhari] in any of the give-and-take compromise through which [he] could negotiate a concession or benefit." *Ibid.* (punctuation omitted).

A last consideration in this context is the weight of the burden placed on the prosecution by the defendant's pretrial litigation efforts: defense motions that are "routine" or "typical" or that add only a "rather minimal" burden to the prosecutor's workload are less likely to spur a vindictive response. *Ladeau*, 734 F.3d at 568, 569. There are two answers to that concern in our case.

First, the defense motions have required a meaningful amount of work on the prosecutor's part. The government has vigorously opposed every defense request, and the suppression motion, in particular, could weaken the government's case at trial. Mr. Zakhari's two motions to relieve the conditions of his home incarceration provoked especially strong reactions: the government twice assailed Mr. Zakhari's release as "a marked departure from the practices of this district" (R. 31, U.S. Resp., Page ID # 97, *and* R. 41, U.S. Resp., Page ID # 209), and it was so affronted that the defense would try to "modify bond conditions ... based largely on Zakhari's comfort" (R. 41, U.S. Resp., Page ID # 209) that it urged the Court to turn Mr. Zakhari's request for bond modification into an opportunity to imprison him instead. The government's pugnacious approach to the litigation indicates, if nothing else,

5

that the defense motions have been more than just a minor inconvenience.

Second, the prosecutor in our case has a record of responding vindictively when defendants in child pornography cases litigate pretrial motions to suppress evidence. In *United States v. Salazar*, Case 3:06-CR-00112-JHM (W.D. Ky.), counsel sought unsuccessfully to exclude illegal images found on the defendant's computer. (*Id.*, R. 31, Order, Jan. 3, 2007, Page ID # 132-133.) The defendant thereafter pleaded guilty without an agreement regarding his punishment. (*See id.*, R. 34, Order, Jan. 16, 2007, Page ID # 144.) At sentencing, the prosecutor refused to ask the Court to credit the defendant a third point for acceptance of responsibility under U.S.S.G. § 3E1.1(b). (*Id.*, R. 44, Def.'s Sentencing Mem., Page ID # 223.) The prosecutor justified this position by claiming that the defense had "pursu[ed] a baseless motion to suppress" which cost the government a "considerable amount of time and effort" to address. (*Ibid.*, Page ID # 223.) When he pronounced the final punishment, Judge Heyburn rebuked the prosecutor:

> [I]n arguing for any particular sentence, ... both sides can be vigorous, and both sides ultimately need to be constrained by a sense of fairness. I think in the case of the United States, let me say you have to be careful about ... calling a motion to suppress baseless[,] and when you argue that a sentence should be increased based on the exercise of a constitutional right.... In

this particular instance, there's no question this motion was not baseless, but that's not my point. The point is the need to be careful about even making such a motion where a Fourth Amendment right has been asserted because the mere making of the motion to a certain extent is chilling. Now, you know, if it can stand on its own weight, that's fine, but I think my caution is to be careful about that because ... the power of the prosecution is great, as it should be, and the responsibilities are accordingly great.

(*Id.*, R. 52, Tr. of Sentencing Hr'g, Page ID # 306-307.) "[T]hose are points more for the future, let's say, than the past," Judge Heyburn concluded. (*Ibid.*, Page ID # 308.) It seems his warning fell on deaf ears.

The prosecution's addition of a new and more punitive charge against Mr. Zakhari was a vindictive act without any objectively appropriate justification. Due Process calls for the Court to dismiss Count 3 of the Superseding Indictment.

    Respectfully submitted,

*Michael R. Mazzoli*
Scott C. Cox
Michael R. Mazzoli
Attorneys for Defendant Zakhari
COX & MAZZOLI PLLC
600 West Main Street, Suite 300
Louisville, Kentucky 40202
502-589-6190
MazzoliCMLaw@aol.com

7

## CERTIFICATE OF SERVICE

On August 20, 2020, I electronically filed this document through the ECF system, which will send a notice of electronic filing to counsel of record.

*/s/ Michael R. Mazzoli*
Scott C. Cox
Michael R. Mazzoli